Counsel. Thank you. Good morning. My name is Melissa Harrison. I am a professor of law at the University of Montana School of Law, serving temporarily for a year as an assistant federal defender in the district of Montana. I would like to reserve three minutes of my time for rebuttal, please. By the way, I just saw a slip opinion. I don't know if you call it to our attention in a 28 day, but I just read it yesterday. It just came out. It was an opinion by Judge Nelson, Judge Tom Nelson that that elaborates on the third stage of Batson of a Batson inquiry. I'm sorry. I can't tell you the name of it. Well, I'm sorry that I can't tell you the name. Well, I'll tell you the name of it. One of my colleagues would be Lewis. We should have sent you a 28 day letter. It came out yesterday. It was in Lewis versus Lewis. It was in my inbox yesterday, but I don't know when it came out. Probably a few days ago. Well, I will. I will have to say that I am not aware of it. It's not going to radically rearrange your argument. No, it's consistent with your argument. I would say it supports your argument. Good. Good. Well, my argument obviously is about the third prong of the Batson test. Here we know that the prosecutor used all six of her peremptory challenges against men. And we know. And was she limited to six? Yes. So she she had all of the six men. Right. And that the reason for four of them was that they did not have children. An additional reason for two of them was that they were young. And we know that at least three women were seated on the jury who did not have children, one of whom was young. I say at least three. There was another woman who did not indicate on the form whether she had children or not. So the issue really is, did the trial court do what it was required to do? Did it refer to the totality of the circumstances when it found there was no purposeful discrimination? And the answer to that is clearly no, it did not. And ultimately, it's the trial court's responsibility in the third stage to consider all the evidence and decide whether the government's explanation is pretextual or not. The only thing that gave me pause about this case at all was this. As I understood the record, Alanis counsel, after the judge said, at what I view as the second stage, will the government express some reasons that seem plausible or whatever? Those are plausible. The Alanis counsel didn't argue to the judge. Well, it's time now to proceed to the third stage. The judge didn't. It's things like he skipped the third stage and just ruled. But the counsel didn't point that out to the judge. So you might view the judge's statement as a third stage conclusion and a second stage confirmation. And the question is, who has the duty to raise the record? Is the judge supposed to sua sponte, look through all the juror information sheets and see an inconsistency? Or is it up to the counsel to argue that? And I thought the Nelson case and maybe some other authorities kind of tilt me towards thinking it's an affirmative duty of the court. It seems a little odd to me to put the duty on the court. So I'm a little troubled by that. Your Honor, you're precisely right, of course, that the question is, whose responsibility is it? I would say, and this is in the excerpts of record at page 24, this right after the prosecutor gave her last reason, we have the court saying, and this is all the court said about this. This is it. It does appear, it appears to the court that the government has offered a plausible explanation based upon each of the challenges discussed that is grounded other than in the fact of gender of the person struck. Now the next sentence is the Batson challenge is denied. Yes. That's the third stage of the next sentence. Right. I think you have, you're absolutely right, that you either had no third stage here or you have in one paragraph the second stage and the third stage truncated. It's clearly not a model of Batson lore by the district court. But the question is, if we were saying what the procedure should be in any way or hinting at it by our reasoning, what should we be saying? I think that's a good point, because it does seem to me that some burden ought to be on the lawyer who makes the Batson challenge to alert the district court that there is some inconsistency here. Your Honor, I agree. And I would say maybe this case is so extreme, the court was so summary that under any theory, the court didn't say. His question is one that we should have whatever there was effect on this court. It's something we should think about and maybe discuss. What should what should the procedure be after the government gives its explanation and says, well, we struck all these people because they were we didn't like their clothes. Then what should happen? When we want to look at pretext, should the defense counsel make an argument? Should the judge say to the defense counsel, what do you think about that? Is it pretext? What is there in the record? How should it proceed? What is the procedure we should set forth if we were going to set one forth? It seems to me, Your Honor, that the ideal procedure would be that the affirmative duty is with the court. And I say that because looking at all the cases, both this circuit's and other circuit cases which I cited, primarily the en banc decision in Riley, which is a third circuit case, but it actually uses your cases, Turner and McClain, in its analysis. When you look at all of the cases, there just simply isn't discussion in there of it being the defense attorney's burden. You just don't in those cases have any requirement that the defense attorney do more. It seems to me that the duty is with the court. As you suggested, Judge Reinhart, that ideally the court might say something like, all right, defense counsel, here are the reasons, what's your response? And that one could say women are left on who have the same characteristics. It would certainly help the judge to know that the court's duty, all of the cases talk about, Riley talks about this, McClain talks about this, is that it is the court who must make a reasoned decision. In fact, I think the most recent, except for the one that came out yesterday. The most recent one, the Lewis case, I think uses a phrase like the affirmative duty of the court at step three or to have step three. So I think it's consistent with your theory. Right. Even not knowing Lewis, I think the newest case before Lewis is Murillo, which is cited by the government in the government's brief, but even Murillo says that if a trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to great difference. Well, I think that also means that it's the trial court that must do this. And here one could in no way characterize this as a sincere and reasoned effort to evaluate. There wasn't any evaluation. I think it may be sincere. Oh, well, sincere. I'm sure it was sincere. I'm sorry. But reasoned. It's too maybe overly truncated or conclusory. But so does there have to be like can there be an evidentiary hearing? I mean, what's the judge if the judge here had just said, okay, I'll hear from having said that about the reasons are plausible. I'll hear from Mr. Alanis counsel. What do you think? And the counsel just said I have nothing to add, you know, just all six were men and didn't add anything. And then the judge says I reject the Batson challenge. Is that enough or does the judge have to say let's take a look at comparison of jurors? I think that it's not enough because I still think the court has an affirmative duty. Our argument is not that comparative analysis is required in every case. But we have this circuit in both McLean and Turner and Bishop, too, I believe, saying that comparative analysis is appropriate in this kind of case. We also have the second, the third, the seventh and the eighth circuits at least saying that comparative analysis is what one should do in this kind of case. So it may not be absolutely required, but I think if we are talking about what would be the optimal thing to do, then I think the judge has the responsibility. The judge should say defense counsel, what do you have to say about that? But ultimately, the judge has to look at the entire record. And that's what the Third Circuit said in Riley. What if the judge just says, well, I know this prosecutor and I've observed her demeanor as she gives me these reasons. I think she's credible. I accept that. But does no comparative analysis. I think that would be insufficient in this case. And that brings up the Burke v. Borg issue, which is that credibility, deference to the judge determining credibility of the prosecutor is more appropriate in a case where the prosecutor says I have a bad feeling about that person or that person looked a certain way. But Burke v. Borg makes a distinction between that type of case and the type of case we have here where there's objective evidence of the discrimination. I see that my time is up. We'll give you a minute for rebuttal. I'm sorry? We'll give you a minute for rebuttal anyway. Thank you. All right. Good morning, and may it please the Court. I'm Marcia Goodsept from the District of Montana, and I'm an AUSA. I actually charged this case. Ms. French from our office tried the case. Ms. Harper Sook from our office briefed the case, and I'm here to argue it for you. I hope you had your Cheerios this morning because it's a tough case for the government, I think. It's a tough case, and it's one that I, believe it or not, have to start again with an apology for a misstatement of fact in our brief. On page 11 of the brief, it cited that Mr. Mullen was struck because of his youth and because the jury questionnaire did not indicate that Mr. Mullen had any children. In fact, that's incorrect. The record is clear that he was struck because of his youth and because his jury questionnaire indicated he had no children, not that it was not indicated. So with that correction ---- Let me just do that so we think you're honest. I just can't stand to find typos and errors at the very end. It just drives me absolutely nuts even when it's not my case. Put one into every brief, right? And I think we're all clear that there are several things that are not at issue here, that this is a Batson case, that it is ---- there's a gender issue here, and that you are to give great deference to the Court's finding. That is the standard in this case. Well, what was its finding? That it's plausible? That's not a sufficient finding. I don't necessarily agree that that's the finding that needs to be reviewed, but I wanted to agree first. What is the first? The finding is that there was no gender discrimination in the selection of those six jurors as the ones that were tossed from this jury. And I guess the one thing I first want to start with is a disagreement that, in fact, this ultimate burden is on the Court, because the most recent Supreme Court pronouncement on this issue, Perkett v. Ellum, the 1995 case, says very clearly, the ultimate burden of persuasion rests with and never shifts from the opponent of that strike. And so, in fact, it is the defendant in this case who had the burden of persuading the Court that, in fact, there was a problem here. There are two different questions that are often buried under the same phrase, but they're really split out in terms of burden of production and burden of persuasion. And in a way, we may be confusing the two. The issue may in part be, who has the burden of producing it? Does the district judge have an independent obligation to look through it, even if the defense attorney or the attorney challenging didn't point the judge's and put the judge's nose in it? That's a burden of production question. Burden of persuasion, we know from Perkett, is always on the challenger. See, and I think that the Court has the ultimate decision to make or the ultimate responsibility to make that final decision, but the judge can't make that decision in a vacuum. And if in this case it was a very interesting challenge, and the challenge was very simply stated of, I don't know that there's been any discrimination here, but I've looked at the questionnaires, and I can think of no other reason for their being struck than the fact that they're gender. I thought that the challenger initially said there was no discrimination, but then made the challenge. But then made the challenge. And so it was an interesting challenge, and the prosecutor immediately stepped to the plate, gave her reasons for the challenges, and then the Court did this rather being the prosecutor articulated the reasons. And so she did that, and then the Court in the third step says, it appears that's a plausible explanation. The Batson challenge is denied. And the defense never said, but wait a minute, I just reviewed the jury questionnaires, and if it's because these people are young or because they don't have kids, then here's these three women, at least one of whom is young and several others who don't have children. And I think that's an absolutely untenable position to put a court in. But they didn't have a chance to say anything. The prosecutor got through with the explanation, and the Court immediately ruled. But there is absolutely no reason. The last thing, the last statement is Mr. Hawley was also struck because he had no children. Judge says, it does appear, it appears to the Court, bang, it's over. The challenge is denied. And there's absolutely no reason the defense attorney can't stand up in that point as they do in various other points and say, Your Honor, I'd respectfully ask to be heard on that. I believe, in fact, that there is discrimination here because I reviewed the jury questionnaires. The problem with this kind of analysis that we do now is, we're not getting Well, he could have. He could have done that. But to get to that point, you have to say that the judge made an error and ruled him properly when he did. And then you're saying, but he should have said to the judge, you made a mistake, Your Honor. And that happens routinely in criminal trials. Yes. It does happen.  Are we there at that point where we agree that the judge was wrong and the judge issued an improper ruling, and the question is, should the defense attorney have corrected this erroneous Batson ruling? This might be a trick question. It may very well be a trick question, and it's almost a beating-your-wife trick question, because I don't believe, in fact, that the judge in this case made an erroneous ruling. I think, in fact, he took the easy part. Well, if it was correct and the defense attorney shouldn't have done anything. No. The defense attorney should have stood up if, in fact, the defense attorney disagreed with that ruling and said, wait, wait, wait, wait, wait. I think you're missing a step here, and I need to make a record on it, because the problem is the three of you then have to sit here and go. Let me ask you this. Are you saying, then, that because the defense attorney didn't say anything after the judge rejected the Batson challenge, that it's waived, that we review for plain error, or are you saying something else? I believe in this case the brief argues that, in fact, since he didn't raise it, that it is waived, and I believe that Ms. Harper argued that in her brief, that, in fact, since he did not raise that, did not make any comment on the judge's ruling, that that has been waived. Even if the Court wishes to consider it. Waived? I mean, ordinarily failure to object, the worst that happens is that we review it for plain error. I know, and that's not, unfortunately, what the brief says. I see. Okay. And you're sticking with the brief this time. I believe I have to. Sometimes these cold transcripts aren't totally fair to the judge. So, for example, we don't know how much of a pause, if there was a pause, there was in duration between saying the reasons appear plausible and then the judge, you know, it could have been a pause for 30 seconds, the judge might have looked at the defense counsel, the defense counsel might have shrugged his or her shoulders like I have nothing to add, and then the judge rules. So we don't know that. Or it could have been instantaneous. It might have been instantaneous. I think we have to kind of try to set a rule that gives guidance to the trial judges. Well, and that certainly would be preferable to coming in on a record where we have to guess what the challenge is then at the end. And the end challenge now is, well, you should have compared all of these people. You should have compared, you know, Mr. Wilkes and Mr. Mullins to Ms. Williamson and Mr. Curtin. And I think that's impossible to do because each one of these jurors have different characteristics. There isn't a specific female juror that's identical to a male juror that was struck. I hope not. In the relevant areas that we're supposed to consider. Several of the people that were struck were 19 years of age, and there aren't any females that are 19 years of age. And I think it just deprives the prosecution of being able to make a clear record for the court of being able to explain. If, in fact, the defense counsel had gotten up and said, whoa, whoa, wait, this just doesn't seem right to me. I've looked at these jury questionnaires. And the judge says, okay, let's take a look at them. And the prosecution could say, well, but this female's also married. And this male that I struck was single. And so there's a difference there to me. I have a question for you. And I don't mean this to be disheartening in any way. But assuming we find a Batson error, I'd like you to address the question of relief. Because it seems to me one way to view it is if there's a Batson error that we send it back to the trial judge and say you didn't do step three, you have to hold further proceeding to address step three explicitly. And if there is a mistake, if there's a Batson error, okay. The defendant gets a new trial. If there isn't, maybe it can be affirmed. Another way to view it is that if there's a Batson error and the judge didn't do step three, that we just ought to reverse the conviction now. So I don't know what the answer – if there's any case law on that. Well, and honestly, Your Honor, this was a brand-new issue for me. And so I had to really get up to speed on it. I've not yet found a Batson case in which it was reversed for additional findings. I've found cases in every case where it was reversed and remanded for a new trial. And so, I mean, obviously, you know, if, in fact, you find a Batson error, the United States would, of course, prefer not to have to put this child through a retrial because the defense attorney didn't make the record that was necessary for the court to make a better Batson finding. But I can't give you any case authority that says that you can't. But what would be wrong with sending it back for a hearing, whether there was a Batson violation to do step three now? Is there anything wrong in theory with that? Is there any evidence that doesn't exist that the court, you know, wouldn't be able to consider now? Well, I know there was one case that I read. And I can't put the name to it right off – right offhand. But it was six years after the trial had been completed. And they went back and did the Batson hearing. Are you familiar with our recent case of Mukhtar in which we decided we shouldn't give the judge a second chance to make an explanation? Exactly. And I think that's what all the cases indicate, is that – And I assume we want to be consistent. That was a civil case. Not just a civil rights litigant. That's true. We'd have to go through a second trial. I assume we would apply it even more in a criminal case than we would in a civil case. The only – Because we rarely upset civil jury verdicts. Exactly. So that's the evidentiary errors. The only fairness – But it was so important to us not to give a second chance to the judge because it was a civil rights litigant. Certainly we want to give the criminal defendant the same opportunity. The problem with that is we're not giving this court the benefit of the wisdom that you have now of saying, you know, I think that there needs to be more than this. And I think that there needs to be some further discussion. And I think there needs to be some burden on the defense if they don't agree with what, in fact, the court has done, to make a record on it so that you have the ability to review that. And the court, obviously, in this case, doesn't have that benefit. So, obviously, I believe that I can't give you any authority for your ability to remand for that. I just rely on Judge Reinhardt's dissent in my – Well, when you lose, you lose. We follow the Supreme Court and we follow the majority that wouldn't – not even a majority. We follow those who would not vote to take it in bank. That's accurate. In this case, though, you know, I think there – I think Judge Reinhardt would tell me what he thinks about that before the case. I guess the United States really has nothing further. I think the issues are very well defined here in terms of what the Batson issue is. I just believe that there ought to be, if this Court sets forth some significant law, some guidance to the trial court about whose responsibility this is. And then the question about whether that can be applied retroactively in this case to Judge Haddon, who wouldn't have had the benefit of that, obviously, is a question. The other thing we need to keep in mind is there were nine women and three men who sat on this jury. Only because you didn't have nine challenges. Well, we never have nine challenges. But the defendant also struck four men and struck his alternate as a man. So, you know, that's the problem with comparative analysis. And I see him over time. Thank you. Okay. Thank you very much. First of all, the fact that there were three men on the jury is irrelevant. Batson itself says that even if one person is struck for impermissible reasons, that that's a violation because it is an equal protection challenge, which the juror, him or herself, has. The – I want – what I would like to do is get away from the defendant – the defense attorney had this responsibility and get more into the prosecutor had a responsibility not to be discriminatory. And we absolutely know that these reasons were pretextual. We know that because we can look at the juror questionnaires. The other thing is that I think that – I will say that in Perkett, the U.S. Supreme Court remanded to the Eighth Circuit for a factual determination on the third prong. Now, that's not the same as taking it back to the trial court. But in Perkett itself, the U.S. Supreme Court said there was no third stage of Batson Dunn. Perkett is really about the second stage. That's what the case is about. But there had been no third stage analysis by the Eighth Circuit, and the U.S. Supreme Court remanded it to the Eighth Circuit. I've never – I have not seen a Batson case where there was a remand for further evidentiary findings. Where there was? I'm sorry, where there was. You haven't seen one where there was? Yes. I've never seen one. I've also never seen – Well, you'd have to be wrong with that here. You could argue to the district court that it's obviously pretextual because of your comparative analysis, and the government could set forth its counter view if it thinks it has legit reasons. But the government had a chance to do that already. They gave their reasons. And presumably, the district court judge knew the law. It was out there. And so it seems to me somewhat unfair to send it back and say, okay, you got it wrong legally, here's your new chance, because the prosecution did give their reasons and they were – that was done. And I don't think they should have another chance. But they weren't asked to give reasons in response to the comparative analysis that appellant asserts. Right. Because the court didn't ask them to and it's the court's obligation to do so. I see that I'm nearly out of time, but I would just like to make one point. I don't think this really is a waiver case. I think it's about what the third stage requires. And I've also never seen a Batson case where – because when the defense attorney did object in the beginning where it was waived by a later – by the fact that they didn't say more later. I haven't seen one that has that either. But if for some reason it was, this could – we would still win, I believe, under a plain error analysis, because it affects substantial rights, clearly. So – but I don't really think that's the issue. I think the issue really is what is the trial court's affirmative duty under the third stage, and the trial court obviously did not do it in this case. Thank you. Thank you, counsel. Thank you both very much. The case just argued will be submitted. Next case on the calendar is Peterson v. Hewlett-Packard. Counsel? Thank you.
judges: Reinhardt, W Fletcher, Gould